**JUDGE DAVID BRIONES**

FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

2019 DEC -4  PM 1: 22

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
                    DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | CRIMINAL NO. EP-19-CR- |
| | § | SEALED |
| Plaintiff, | § | I N D I C T M E N T |
| | § | |
| v. | § | CT 1:18 U.S.C. § 371 -  Conspiracy |
| | § | CTS 2-8: 18 U.S.C. § 545-  Smuggling |
| ALEJANDRO CARRILLO, | § | Into U.S. |
| a.k.a  JOHN LARRANUS,  OSCAR | § | CT 9-12: 16 U.S.C. §§ 3372(a)(1) & |
| MIRANDA, and  JOSE URUETA | § | 3373(d)(1)(B) - Lacey Act Wildlife |
| | § | Trafficking |
| Defendant. | § | CT 13: 16 U.S.C. §§ 3372(d)(1), |
| | § | 3373(d)(3)(A)(i) - Lacey Act False |
| | § | Wildlife Record |

<u>INDICTMENT</u>

# E P 19 C R 3 9 3 2

The GRAND JURY charges that at all times material to this Indictment:

### COUNT 1
### Conspiracy
### (18 U.S.C. § 371)

#### The Defendant and Co-Conspirators

1.    **ALEJANDRO CARRILLO** ("Carrillo" or "Defendant") was a retired university professor and resident of El Paso, Texas. At all times relevant to this Indictment, CARRILLO was authorized to use and did use the U.S. Border and Customs Protection Secure Electronic Network for Travelers Rapid Inspection ("SENTRI") lanes during his visits to Mexico. This allowed him to drive a vehicle through dedicated lanes at ports of entry between the United States and Mexico with expedited clearance and minimal risk of inspection.

2.    CC-1, CC-2, CC-3, and CC-4, (referred to collectively as "the suppliers"), co-conspirators not named as defendants herein, were Mexican nationals residing in Mexico who

*Exhibit 1*

were in the business of selling protected and endangered wildlife to customers in the United

States and elsewhere. The suppliers used social media, primarily Facebook, to advertise live

animals for sale, negotiate a price for the animals, and to arrange for the transport and delivery of

the purchased animals.

### Background on the Regulation of Trade in Endangered Species

3.      The Convention on International Trade in Endangered Species of Wild Flora and

Fauna ("CITES") is an international agreement between governments to protect fish, wildlife,

and plants that are, or may become, threatened with extinction by establishing import and export

restrictions to protect these species from overexploitation through international trade. There are

approximately 183 party countries to CITES. The United States formally entered into CITES on

July 1, 1975. Mexico became a party to the CITES treaty on September 30, 1991.

4.      Under CITES, species are protected according to a classification system known as

"appendices." International trade in species listed in these appendices is monitored and regulated

by permits and quotas. The permit restrictions apply to live and dead specimens, as well as the

skins, parts, and products made in whole or in part from a listed species. The appendices provide

a sliding scale of protection, with Appendix I providing the highest level of protection.

5.      Wildlife and plant species listed in Appendix I of CITES are those currently

threatened with extinction and that are or may be further threatened by trade. Appendix I species

can be imported into the United States only if, prior to importation, the importer possess a valid

CITES export document issued by the country of export, as well as valid corresponding CITES

import documentation issued by the United States.

6.      Wildlife and plant species listed in Appendix II of CITES include species

that are not presently threatened with extinction but may become so if their trade is not

2

regulated.   Appendix II species may be allowed in trade; however, they are strictly regulated and monitored.  In order to import any wildlife species listed in Appendix II into the United States from a foreign country, the regulations require that a valid "foreign export permit," issued by the specimen's country of origin, be obtained prior to importing any such wildlife into the United States.

7.      Wildlife and plant species listed in Appendix III of CITES include species that are not presently threatened with extinction, but for which a member country requests assistance in controlling trade.

8.      *Abronia* is a genus of lizards found in Mexico and throughout Central America and northeastern South America. *Abronia* are small arboreal lizards which inhabit cloud forests at high elevations. It is listed in CITES Appendix II.

9.      *Dermatemys mawii* is a species of turtle commonly referred to as the Central American river turtle and is found in the Atlantic drainages of Central America, specifically Mexico, Belize and Guatemala.  The Central American river turtle is thought to be one of the 25 most endangered turtle species in the world and has been locally extirpated from much of its historic range. The Central American river turtle is listed as endangered by the United States Fish and Wildlife Service (USFWS) as well as listed in CITES Appendix II.

10.     *Cyclura corntua* is a species of lizard that is primarily found in Haiti and the Dominican Republic and is commonly referred to as the rhinoceros iguana. The rhinoceros iguana has been listed in CITES Appendix I since 1981.

11.     *Cyclura Lewisi* is a species of lizard endemic to the island of Grand Cayman and is commonly known as the blue iguana.  In 2005, the wild population was considered to be

3

functionally extinct and this species is considered one of the most endangered on earth. The blue iguana is currently listed as endangered by the USFWS as well as listed in CITES Appendix I.

12.     *Rhinoclemmys* is a genus of terrestrial turtles commonly known as Neotropical Wood Turtles. Species of *Rhinoclemmys* are protected under Mexican law due to loss of habitat and their desirability to collectors.

13.     Toucans are arboreal, colorful, birds native to the neotropics, the region comprising Central and South America, including the tropical southern part of Mexico and the Caribbean. Toucan populations suffer from loss of habitat and deforestation. They are hunted for both food and the pet trade.  To legally import toucans into the United States, in addition to submitting the proper declarations, one must obtain a veterinary services import permit and a 30-day quarantine for the bird, due to potential disease outbreaks. Toucans are currently listed in CITES Appendix II.

14.     The genus *Varanus* includes the large lizards commonly referred to as monitors. *Varanus* is listed in CITES Appendix II.

15.     *Calumma* and *Furcifer* are genera of chameleons originating from Madagascar. Both genera are listed in CITES Appendix II.

16.     In the United States, CITES is implemented through the Endangered Species Act ("ESA"), which directs the USFWS to administer the treaty. 16 U.S.C. §§ 1537(a), 1540(f). USFWS has issued extensive regulations incorporating the specific permit requirements and provisions of CITES and listing the species contained in the CITES appendices. 50 C.F.R. § 23. The ESA makes it unlawful for anyone to engage in trade in any specimens contrary to CITES or to possess any specimens traded contrary to CITES. 16 U.S.C. § 1538(c)(1); 50 C.F.R § 23.13(a) and (c). "Trade," in this context, includes importation into the United States.  50 C.F.R. § 23.5.

17.     All imported wildlife must be declared to the USFWS in the United States. A true and complete declaration Form 3-177, *Declaration for Importation or Exportation of Fish or Wildlife*, must be filed at the port where clearance is requested from the USFWS at or before the time of importation. 16 U.S.C. § 1538(e); 50 C.F.R. § 14.61. Federal regulations also require that the USFWS clear all wildlife imported into the United States, and that the importer or his agent make available the wildlife being imported to the officer, as well as all required permits, licenses, or other documents. 50 C.F.R. § 14.52. The wildlife may only be cleared at certain ports authorized in the regulations, or by permit. 50 C.F.R. § 14.11.

18.     The federal wildlife protection statute known as the Lacey Act is found at Title 16, United States Code, Section 3371 *et seq.* The Lacey Act makes it unlawful for any person to import, export, sell, receive, acquire, or purchase any fish or wildlife or plant taken, possessed, transported, or sold in violation of any law, treaty, or regulation of the United States. 16 U.S.C. § 3372(a)(1).

19.     The Lacey Act makes it unlawful for any person to make or submit any false record, account, or label for, account for, or any false identification of, any fish, wildlife, or plant which has been, or is intended to be: (1) imported, exported, transported, sold, purchased, or received from any foreign country; or (2) transported in interstate or foreign commerce. 16 U.S.C. § 3372(d).

## The Conspiracy

20. Beginning on an unknown date, but at least as early as April 2015, and continuing through the present, in the Western District of Texas and elsewhere,

ALEJANDRO CARRILLO,

defendant herein, knowingly combined, conspired, confederated, and agreed with others known and unknown, including CC-1, CC-2, CC-3, and CC-4 to commit certain offenses against the United States, that is:

  a. to fraudulently and knowingly import and bring into the United States, merchandise, namely wildlife, including CITES-protected wildlife, contrary to laws and regulations of the United States, and receive, conceal, buy, sell, and in any manner facilitate the transportation, concealment, and sale of such merchandise after importation, knowing the same to have been imported and brought into the United States contrary to laws and regulations of the United States, by, among other things, knowingly failing to make the required declaration and obtain the required authorization to import such items into the United States, in violation of Title 18, United States Code, Section 545;

  b. to knowingly import, export, transport, sell, receive, acquire, and purchase wildlife with a market value in excess of $350, knowing that such wildlife was taken, possessed, transported, and sold in violation of laws, treaties, and regulations of the United States, in violation of Title 16, United States Code, Sections 3372(a)(1) and 3373(d)(1)(B); and

  c. to knowingly make and submit a false record, account, and label for, and false identification of, wildlife, including CITES-protected wildlife, that had been and was intended to be imported and exported, in violation of Title 16, United States Code, Sections 3372(d) and 3373(d)(3)(A)(i).

## Manner and Means of the Conspiracy

The manner and means by which CARRILLO and his co-conspirators sought to accomplish the objects and purposes of the conspiracy included, among others, the following:

21. In furtherance of the conspiracy and to effect the illegal objects thereof, CARRILLO and others known and unknown, including the suppliers, sold and purchased and

assisted in the sale and purchase of endangered and protected wildlife, including the species identified above.

22.     In furtherance of the conspiracy and to effect the illegal objects thereof, CARRILLO and others known and unknown, including the suppliers, used social media to offer wildlife for sale and to negotiate the terms of the sale and delivery with U.S.-based customers.

23.     In furtherance of the conspiracy and to effect the illegal objects thereof, CARRILLO and others known and unknown, including the suppliers, transported and assisted in the transportation of wildlife between the United States and Mexico.

24.     In furtherance of the conspiracy and to effect the illegal objects thereof, after the suppliers and customers agreed to a sale, the suppliers arranged for the wildlife to be transported to Juarez, Mexico, where CARRILLO picked up the wildlife and transported it to his residence in El Paso, Texas, via automobile, including a 2017 Mercedes Benz, Series 300, Model GLC with VIN#: WDC0G4JB0HF150406, bearing Texas license plate 7NXZH, which CARRILLO drove across the U.S.-Mexico border through the SENTRI Lane.

25.     In furtherance of the conspiracy and to effect the illegal objects thereof, CARRILLO received a "crossing fee" for each border crossing, the amount of which depended on the number of animals transported, the size of the package(s), and, in some cases, the risk of being detected by the authorities.

26.     In furtherance of the conspiracy and to effect the illegal objects thereof, at his residence, CARRILLO removed the animals from their packaging. CARRILLO would photograph any dead animal(s) and send the photo(s) to the supplier. CARRILLO then re-packaged the live animals and shipped them to the customer via U.S. Postal Service or private courier service.

27.    Beginning on a date not later than April 2015 and continuing through the present day, CARRILLO transported endangered and protected wildlife across the U.S.-Mexico border several times per week and, on occasion, more than once per day. During that time period, CARRILLO transported wildlife with a market value in excess of $3,500,000. During that time period, CARRILLO was paid more than $92,000 to transport wildlife across the U.S.-Mexico border.

## OVERT ACTS

28.    In furtherance of the conspiracy and in order to effect the objects thereof, CARRILLO and his co-conspirators committed the following overt acts, among others, in the Western District of Texas and elsewhere:

### April 2015 sale and smuggle of wildlife to U.S. Customer 1

**Overt Act 1:** On or about and between April 21, 2015, and April 23, 2015, CC-2 sold wildlife, including but not limited to 3 protected *Abronia* lizards, 50 frogs, and 27 salamanders, to U.S. Customer 1.

**Overt Act 2:** On or about and between April 21, 2015, and April 23, 2015, CARRILLO and CC-2 electronically messaged each other regarding the sale of wildlife to U.S. Customer 1, stating:

| | |
|---|---|
| CARRILLO: | When will you be sending again? Have you already sent the turtles? |
| CC-2: | I was going to send today, but there was a problem with the frogs. They [turtles and frogs] will be sent tomorrow. |
| CARRILLO: | I am going to call [U.S. Customer 1] and ask him to send more money. [To take them across the border] is 500 pesos per box of frogs. |

**Overt Act 3:**  On or about April 23, 2015, CARRILLO transported the lizards, frogs, and salamanders from Mexico into the United States.

**Overt Act 4:**  On or about April 23, 2015, CARRILLO shipped the lizards, frogs, and salamanders from El Paso, Texas, to U.S. Customer 1 in California.

**Overt Act 5:**  On or about and between April 22, 2015, and April 24, 2015, CC-2 and U.S. Customer 1 sent electronic payments to CARRILLO totaling approximately $351.

### May 2015 sale and smuggle of wildlife to U.S. Customer 2

**Overt Act 6:**  On or about and between May 12, 2015, and May 19, 2015, CC-3 sold wildlife, including but not limited to 6 *Abronia* lizards, to U.S. Customer 2.

**Overt Act 7:**  On or about and between May 12, 2015, and May 19, 2015, CARRILLO and CC-3 electronically messaged each other regarding transport of the wildlife to Juarez, Mexico, for CARRILLO to pick up and transport into the United States. As part of this discussion, they stated:

| | |
|---|---|
| CC-3: | [referring to a photograph he sent to CARRILLO] This is the other *Mesaspis* [lizards]. The package is already in Juarez. |
| CARRILLO: | I am upset with [U.S. customer]. He sent $47, not $50. |
| CC-3: | I will send you the $3, or more *Abronia*. |
| CARRILLO: | We take all the risk. [U.S. Customer] should have sent the $50. |
| CC-3: | Getting and transporting the animals is risky. |
| CARRILLO: | Yes, very. |

**Overt Act 8:**  On or about May 16, 2015, U.S. Customer 2 electronically transferred $150 to CARRILLO for the May 2015 transport and shipment of *Abronia* lizards.

**Overt Act 9:** On or about May 19, 2015, CARRILLO received a shipping label from U.S. Customer 2 electronically.

**Overt Act 10:** On or about May 19, 2015, CARRILLO shipped the *Abronia* lizards from El Paso, Texas, to U.S. Customer 2 in Tennessee.

## January and February 2016 sales and smuggling of wildlife to U.S. Customer 3

**Overt Act 11:** On or about January 23, 2016, CARRILLO and CC-1 electronically messaged each other regarding a planned sale, stating:

CC-1:        I live in Mexico City and have a commercial business that sells animals. I am able to transport them within Mexico, but needed them to "cross crooked." You can pick up the animals in Juarez.

CARRILLO:   It will be $700 to cross the animals. Crossings of this quantity of animals is difficult because the heat makes it difficult to hide the animals and the officers check more often.

**Overt Act 12:** On or about and between January 23, 2016, and February 25, 2016, CC-1 sold wildlife, including but not limited to 2 Mexican spotted wood turtles, 23 boa constrictors, and 2 Mexican spiny-tailed iguanas, to U.S. Customer 3.

**Overt Act 13:** On or about January 23, 2016, CARRILLO transported the turtles, snakes, and iguanas from Mexico into the United States.

**Overt Act 14:** On or about January 23, 2016, CARRILLO shipped the turtles, snakes, and iguanas from El Paso, Texas, to U.S. Customer 3 in Florida.

**Overt Act 15:** On or about February 25, 2016, CC-1 electronically transferred $920 to CARRILLO via PayPal.

## January 2016 sale and smuggling of wildlife to U.S. Customer 4

**Overt Act 16:** On or about and between January 14, 2016, and January 25, 2016, CC-1 sold wildlife, including but not limited to Central American river turtles, to U.S. Customer 4.

**Overt Act 17:** On or about January 14, 2016, CARRILLO, CC-1, and U.S. Customer 4 electronically messaged each other regarding a sale of *Abronia* and turtles, stating:

| | |
|---|---|
| Carrillo: | For *Abronias*, the crossing is $110, so for tomorrow's shipping, we are talking $320, total. |
| U.S. Customer 4: | Really, I don't understand why the turtles shipping is 150. I thought I already paid 550 for the crossing plus the actual shipping. |
| CARRILLO: | No, to cross the tres lomos [turtles] was quite an ordeal and then I was not expecting those 12 chopos [turtles]. I had to make 3 trips. The box is quite heavy and, on top of that, those chopos bite hard. I had to improvise yesterday with all the animals. Those 2 tres lomos are big and heavy, so let's play by the rules. I really risk a lot by crossing things. Yesterday, it was pretty scary with those 2 monsters. |

**Overt Act 18:** On or about January 25, 2016, U.S. Customer 4 and CARRILLO electronically messaged each other about transport of turtles and monitor lizards from Juarez. CARRILLO instructed U.S. Customer 4 to package the turtles, and ensure that the turtles were put into socks.

**Overt Act 19:** On or about January 25, 2016, CARRILLO transported turtles from Mexico into the United States.

**Overt Act 20:** On or about January 25, 2016, CARRILLO shipped turtles from Texas to U.S. Customer 4 in Missouri.

**Overt Act 21:** On or about January 25, 2016, U.S. Customer 4 electronically transferred $550 to CARRILLO via MoneyGram.

### September 2016 sale of wildlife to Cooperating Private Individual 1

**Overt Act 22:** On or about and between September 16, 2016, and September 22, 2016, CC-4 sold wildlife, including but not limited to Central American river turtles, to Cooperating Private Individual 1 ("CPI-1") for $1,650.

**Overt Act 23:** On or about September 16, 2016, CC-4 and CPI-1 electronically messaged each other regarding the sale of the turtles in which CC-4 stated that the payment should be split between CC-4 and CARRILLO, who CC-4 described as his "middle-man in El Paso."

**Overt Act 24:** On or about September 17, 2016, CPI-1 electronically transferred $800 to CARRILLO via PayPal.

**Overt Act 25:** On or about September 22, 2016, CARRILLO transported turtles from Mexico into the United States.

**Overt Act 26:** On or about September 22, 2016, CARRILLO shipped turtles from Texas to CPI-1 in Oklahoma.

### January 2017 sale and smuggling of wildlife to U.S. Customers 5, 6, and 7

**Overt Act 27:** On or about and between January 17, 2017, and January 19, 2017, CC-1 and CC-4 sold wildlife, including but not limited to Terrestrial arboreal alligator lizards, Spiny headed tree frogs, Red lipped arboreal alligator lizards, Morelet's alligator lizards, Alligator lizards, Helmeted iguanas, Bocourt's arboreal alligator lizards, Yucatan spiny-tailed iguanas, Conehead lizards, and Bromelaid arboreal alligator lizards, to U.S. Customers 5, 6, and 7.

**Overt Act 28:** On or about January 18, 2017, CARRILLO and CC-1 electronically messaged each other regarding a sale of the species listed in Overt Act 27, stating:

CC-1:         [CC-4] insisted on shipping everything in one trip. I will get the [animals] and ship them to Juarez on Monday. Profepa [Mexican authorities] was checking and opening packages and I do not want a hard time.

CARRILLO:  The stuff you sent is safe.

**Overt Act 29:** On or about January 18, 2017, CC-4 sent an electronic message to CARRILLO listing all the animals contained in the latest package, instructions on which customer was to receive which animal, and which customer was going to pay for the transport and shipping.

**Overt Act 30:** On or about and between January 18, 2017, and January 19, 2017, CARRILLO transported packages containing wildlife from Mexico into the United States.

**Overt Act 31:** On or about January 19, 2017, CARRILLO shipped wildlife from El Paso, Texas, to U.S. Customer 5 in Florida, U.S. Customer 6 in Florida, and U.S. Customer 7 in California.

**Overt Act 32:** On or about and between January 18, 2017, and January 23, 2017, U.S. Customers 5, 6, and 7 electronically transferred money to CARRILLO in amounts totaling $1,034.

### July 2017 sale and smuggling of wildlife to U.S. Customer 8

**Overt Act 33:** On or about July 25, 2017, CC-4 sold wildlife, including but not limited to 6 toucans, to U.S. Customer 8.

**Overt Act 34:** On or about July 25, 2017, CARRILLO and CC-4 electronically messaged each other regarding the transport of toucans, stating:

CC-4:         Will you cross toucans for $75 [per bird]? It would be the same as crossing reptiles, they would be in a box.

CARRILLO:  $85 [per bird] and tape their beaks so they do not make noise and tie them up very well.

**Overt Act 35:**  On or about August 2, 2017, U.S. Customer 8 electronically transferred $410 to CARRILLO.

**Overt Act 36:**  On or about August 3, 2017, CARRILLO transported toucans from Mexico into the United States.

**Overt Act 37:**  On or about August 3, 2017, CARRILLO shipped toucans from El Paso, Texas, to U.S. Customer 8 in Nevada.

**November 2017 sale and smuggling of wildlife to Cooperating Private Individual 2**

**Overt Act 38:**  On or about and between November 7, 2017, and November 16, 2017, CC-1 sold wildlife, including but not limited to 15 Belle's false salamanders, to CPI-2 for $1200.

**Overt Act 39:**  On or about November 9, 2017, CPI-2 electronically transferred $262 to CARRILLO for the transport and shipping of salamanders.

**Overt Act 40:**  On or about November 15, 2017, CARRILLO labeled the package containing salamanders shipped to CPI-2 with the following false return address: "Oscar Miranda, 1701 Hawkins Blvd., El Paso, Texas 79925."

**Overt Act 41:**  On or about November 15, 2017, CARRILLO transported salamanders from Mexico into the United States and shipped the salamanders from El Paso, Texas, to CPI-2 in Iowa.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2 - 8
### Smuggling into the United States
### (18 U.S.C. §§ 545 and 2)

Paragraphs 1 through 19 of Count 1 of the Grand Jury's Indictment are incorporated herein by reference as if set forth in their entirety.

On or about the dates listed below, each date representing a separate count, in the Western District of Texas and elsewhere,

ALEJANDRO CARRILLO,

defendant herein, did knowingly import and bring into the United States, merchandise, specifically the protected wildlife listed below, contrary to laws and regulations of the United States, and received, concealed, bought, sold, and in any manner facilitated the transportation, concealment, and sale of such merchandise after importation, knowing the same to have been imported and brought into the United States contrary to laws and regulations of the United States, by, among other things, knowingly failing to make the required declaration and obtain the required authorization to import such items into the United States, in violation of Title 16, United States Code, Section 1538(e); and Title 50, Code of Federal Regulations, Sections 14.11, 14.52, and 14.61.

| COUNT | DATES | WILDLIFE |
|-------|-------|----------|
| 2 | April 23, 2015 | Red lipped arboreal alligator lizard (*Abronia lythrochila*); Imbricate alligator lizard (*Barisia imbricate*); and alligator lizard (*Mesaspis sp.*) |
| 3 | May 19, 2015 | Red-lipped arboreal alligator lizard (*Abronia lythrochila*); *Abronia sp.;* Mexican spiny-tailed iguana (*Ctenosaura pectinate*); *Lepidophyma sp., Corytophanes sp., Gerrhonotus sp.;* Terrestrial arboreal alligator lizard (*Abronia graminea*); *Abronia smithi;* Yucatán spiny-tailed iguana (*Ctenosaura defensor*) |
| 4 | January 23, 2016 | Common boa (*Boa constrictor imperator*); Mexican spotted wood turtle (*Rhinoclemmys rubida*); Mexican spiny-tailed iguana (*Ctenosaura pectinate*); *Abronia sp.;* Narrow-bridged musk turtle (*Claudius angustatus*); Central American river turtle (*Dermatemys mawii*); *Corytophanes sp.* |

| COUNT | DATES | WILDLIFE |
|---|---|---|
| 5 | Sept 22, 2016 | Central American river turtle (*Dermatemys mawii*); Mexican spotted wood turtle (*Rhinoclemmys rubida*); Giant horned lizard (*Phrynosoma asio*); Bromeliad arboreal alligator lizard (*Abronia taeniata*); Deppe's arboreal alligator lizard (*Abronia deppii*); Red-lipped arboreal alligator lizard (*Abronia lythrochila*); Minor lizard (*Sceloporus minor*); Yucatan box turtle (*Terrapene Carolina yucatana*) |
| 6 | January 18, 2017 – January 19, 2017 | Terrestrial arboreal alligator lizard (*Abronia graminea*); Spiny-headed treefrog (*Anotheca spinose*); Red-lipped arboreal alligator lizard (*Abronia lythrochila*); Morelet's alligator lizard (*Mesaspis moreletii*); Gerrhonotus sp.; Bocourt's arboreal alligator lizard (*Abronia vasconcelosi*); Yucatán spiny-tailed iguana (*Ctenosaura defensor*); Corytophanes sp.; Bromeliad arboreal alligator lizard (*Abronia taeniata*); *Laemanctus sp.* |
| 7 | August 3, 2017 | Mexican spiny-tailed iguana (*Ctenosaura pectinate*); Northeastern spinytail iguana (*Ctenosaura acanthura*); Mexican giant musk turtle 'lomos' (*Staurotypus triporcatus*); Keel billed toucan (*Ramphastos sulfuratus*) |
| 8 | Nov 15, 2017 | Bell's false brook salamander (*Isthmura belli*); Keel billed toucan (*Ramphastos sulfuratus*); Mexican spotted wood turtle (*Rhinoclemmys rubida*); Mexican horned lizard (*Phrynosoma Taurus*); Narrow-bridged musk turtle  (*Claudius angustatus*); *Abronia sp., Crotalus sp.* |

All in violation of Title 18, United States Code, Sections 545 and 2.

## COUNTS 9 - 12
### Wildlife Trafficking
### (16 U.S.C. §§ 3372(a)(1) and 3373(d)(1)(B); and 18 U.S.C. § 2)

Paragraphs 1 through 19 of Count 1 of the Grand Jury's Indictment are incorporated herein by reference as if set forth in their entirety.

On or about the dates listed below, each date representing a separate count, in the Western District of Texas and elsewhere,

### ALEJANDRO CARRILLO,

defendant herein, did knowingly engage in conduct that involved the sale and purchase of, offer of sale and purchase of and intent to sell and purchase wildlife with a market value in excess of $350 and did knowingly import, export, transport, sell, receive, acquire, and purchase wildlife, specifically the wildlife listed below, with a market value in excess of $350, and did aid and abet in the same, knowing that such wildlife was transported and sold in violation of the laws, treaties, and regulations of the United States, to wit, the Endangered Species Act, Title 16, United States Code, Section 1538(c)(1); Title 50, Code of Federal Regulations, Sections 14.11, 14.52, and 14.61; and Title 18, United States Code, Section 545.

| COUNT | DATE | WILDLIFE |
|-------|------|----------|
| 9 | January 25, 2016 | Central American river turtle (*Dermatemys mawii*) |
| 10 | July 27, 2016 | Rhinoceros iguana (*Cyclura cornuta*) |
| 11 | September 16, 2016 | Central American river turtle (*Dermatemys mawii*) |
| 12 | September 15, 2017 | Campbell's alligator lizard (*Abronia campbelli*) |

All in violation of Title 16, United States Code, Sections 3372(a)(1) and 3373(d)(1)(B); and Title 18, United States Code, Section 2.

## COUNT 13
### False Wildlife Record
### (16 U.S.C. §§ 3372(d)(1) and 3373(d)(3)(A)(i); and 18 U.S.C. § 2)

Paragraphs 1 through 19 of Count 1 of the Grand Jury's Indictment are incorporated herein by reference as if set forth in their entirety.

On or about June 12, 2016, in the Western District of Texas and elsewhere,

### ALEJANDRO CARRILLO,

defendant herein, did knowingly make and submit, and caused to be made and submitted, a false record, account, and label, for wildlife and plants, to wit a Customs declaration form PS2976, which stated the content of a package was "figurine," when in fact and in truth, the package contained a protected cactus listed in CITES Appendix II.

All in violation of Title 16, United States Code, Sections 3372(d)(1) and 3373(d)(3)(A)(i); and Title 18, United States Code, Section 2.

## LACEY ACT FORFEITURE ALLEGATIONS
### (16 U.S.C. § 3374 and 28 U.S.C. § 2461)

The GRAND JURY further alleges:

1.      Upon conviction of the offenses alleged in Counts 9 through 13 of this Indictment, the defendant

### ALEJANDRO CARRILLO,

shall forfeit to the United States pursuant to Title 16, United States Code, Section 3374, Title 18 United States Code Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), (1) all fish or wildlife or plants imported, exported, transported, sold, received, acquired, or

purchased during the commission of the offense; and (2) all vessels, vehicles, and other

equipment used to aid in the exporting, transporting, selling, receiving, acquiring, or purchasing

of fish or wildlife plants in the commission of the offense. The property to be forfeited includes,

without limitation:

    a.  All fish or wildlife seized from Carrillo or 132 New Orleans Drive, El Paso, TX 79912, pursuant to search warrant executed on or about December 11, 2019;

    b.  2017 Mercedes Benz, Series 300, Model GLC with VIN#: WDC0G4JB0HF150406, bearing Texas license plate 7NXZH;

    c.  Residence located at 132 New Orleans Drive, El Paso, TX 79912

2.    If any of the property identified as being forfeitable pursuant to Title 16, United

States Code, Section 3374, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been co-mingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 16, United States Code, Section 3374(b) and Title 28, United States Code,

Section 2461(c), to seek forfeiture of any other property of the defendant, up to the value of the

property described in Paragraph 1(a) – (c), above.

    All pursuant to Title 16, United States Code, Section 3374.

## SMUGGLING FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C § 2461(c))

The GRAND JURY further alleges:

1.      As the result of committing the offenses alleged in Counts 2 through 8 of this Indictment, the defendant,

### ALEJANDRO CARRILLO,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the defendant's trafficking of wildlife. The property to be forfeited includes, without limitation:

      a.   All fish or wildlife seized from Carrillo or 132 New Orleans Drive, El Paso, TX 79912, pursuant to search warrant executed on or about December 11, 2019;

      b.   2017 Mercedes Benz, Series 300, Model GLC with VIN#:

         WDC0G4JB0HF150406, bearing  Texas license plate 7NXZH; and

      c.   Residence located at 132 New Orleans Drive, El Paso, TX 79912.

2.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third person;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C.

§ 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above-

described forfeitable property.

All pursuant to Title 18, United States Code, Section 981; Title 21, United States Code,

Section 853; and Title 28, United States Code, Section 2461.

A TRUE ~~ORIGINAL SIGNATURE~~
~~REDACTED PURSUANT TO~~
~~E-GOVERNMENT ACT OF 2002~~
_____
FOREPERSON OF THE GRAND JURY


JEAN E. WILLIAMS
DEPUTY ASSISTANT ATTORNEY GENERAL
ENVIRONMENT AND NATURAL
RESOURCES DIVISION

By:        _____
           Gary N. Donner
           Trial Attorney
           Environmental Crimes Section
           U.S. Department of Justice